## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MARK D. ARMSTRONG,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-12-190-SPS** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of the Social** | ) | |
| **Security Administration,**[1] | ) | |
| | ) | |
| **Defendant.** | ) | |

### OPINION AND ORDER

The claimant Mark D. Armstrong requests judicial review of a denial of benefits

by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. §

405(g). He appeals the Commissioner's decision and asserts the Administrative Law

Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed

below, the Commissioner's decision is hereby REVERSED and the case is REMANDED

to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical or

mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the

Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."  *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on January 3, 1966, and was forty-four years old at the time of the administrative hearing.  (Tr. 50, 176).  He completed the eleventh grade, and has worked as a brake press operator, roustabout, farm or ranch hand, motel housekeeper, and dishwasher.  (Tr. 35, 210).  The claimant alleges he has been unable to work since January 25, 2008, due to a torn ACL, torn MCL on left knee, right toe out of joint, left shoulder/rotator cuff injury, heart problems, back and hernia problems, right ankle problems, a plate in his right forearm being loose, and carpal tunnel.  (Tr. 210).

### Procedural History

On March 20, 2009, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85.  His application was denied.  ALJ Edward L. Thompson conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated December 11, 2010.  (Tr. 28-36).  The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for this appeal.  *See* 20 C.F.R. § 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation.  He found that the claimant had the residual functional capacity ("RFC") to perform light work, *i. e.*, he

could lift ten pounds frequently and twenty pounds occasionally, and sit/stand/walk six hours in an eight-hour workday, but could not overhead reach bilaterally and could only raise his upper extremities up to ninety degrees.  (Tr. 32).  The ALJ thus concluded that the claimant was not disabled because he could return to his past relevant work as a farm or ranch hand, as he actually performed that job.  (Tr. 35).

### Review

The claimant contends that the ALJ erred:  (i) by improperly finding that he could return to his past relevant work, and (ii) by improperly assessing his credibility.  The Court finds the claimant's first contention persuasive.

The ALJ found that that the claimant had the severe impairments of lumbar spondylosis, torn ACL and MCL on left knee, left shoulder pain, right ankle pain, status post-surgical hardware placement in right forearm, status post bilateral carpal tunnel syndrome surgery.  (Tr. 31).  The medical evidence reveals that the claimant experienced bilateral inguinal hernias, which he had surgically repaired.  (Tr. 294).  In October 2003, the claimant experienced a right fifth digit amputation while butchering a hog.  (Tr. 285).  At a 2005 consultative exam, Dr. Dennis Whitehouse found that the claimant had a very limited exam, noting that he complained of severe pain that seemed out of proportion to the physical findings.  Dr. Whitehouse stated that it seemed "unusual" that the claimant was able to sit at 90 degrees without complaining of pain there, but had "a lot" of subjective pain in his back with 45 degrees of flexion.  (Tr. 326).

Dr. Vergil D. Smith began treating the claimant in 2005 for treatment of his pain because the claimant's wife sent him there to avoid the high prices of pain medications

"off the street."  (Tr. 321).  Dr. Smith's treatment of the claimant largely consisted of refills of pain medication, *i. e.*, hydrocodone, valium, lortab, etc.  His notes reflect that he was aware of the claimant's pursuit of supplemental security income.  (Tr. 319).  Several times, Dr. Smith referred to the claimant's pursuit of disability benefits and noted in 2006 that the claimant had not worked in over five years.  (Tr. 369-375).  He described the claimant "like a dynamo in constant motion," and stated, "He is here to get his pain medicine.  I am here to give it to him."  (Tr. 375-376).  On February 8, 2005, he described the claimant as disabled, but by April 7, 2009, he stated, "I have just come to the conclusion that he is a fellow seeking a check and so far he has failed.  He is a funny guy, I like to talk to him and I like to see him, but he does not have qualifications to get himself a check from anybody.  The worse we can find on him is mild lumbar spondylosis, that is arthritis."  (Tr. 401).  In 2006, MRIs of the claimant's knee revealed no problems in the right knee and an abnormal cruciate ligament that appeared related to an incomplete tear on the left knee.  (Tr. 378-381).  In 2007, he stated:  "This guy hunts and fishes all the time and his wife is okay with that, she works, and he still never got a check coming in and he said he has blew out his knee again.  The fact is, every bit of the diagnostic information I have obtained in the form of x-rays and CT scan tells us that this guy does not have much reason to be disabled."  (Tr. 404).  MRIs from 2008 revealed mild lumbar spondylosis with no acute abnormality.  (Tr. 396).

Dr. Smith also completed a Medical Source Statement (MSS) in 2006.  The MSS indicated that the claimant could stand a total of two hours in an eight-hour workday, sit/walk one hour, and lift up to ten pounds only occasionally.  (Tr. 383).  In support, Dr.

-5-

Smith referred to the claimant's "phys limitations [with] stiffness back & legs & [right] arm," and that "no one can see pain." (Tr. 384-385). On October 8, 2009, Dr. Smith prepared a letter describing the claimant's impairments and stating that "[h]is functional capacity from a physical standpoint seems to be limited in his shoulders and in his knees, and in his ability to flex at the waist, all these things seem to be limited somewhat in their extreme motions. . . . In the period of time I have known [him] he has seemingly degenerated in his ability to function physically with increasing pain in his spine, shoulders, neck, and knees, and right ankle. . . . I don't think he can hold up to do any kind of work of any nature that requires any kind of effort of a muscular type." (Tr. 439-441).

In December 2006, a state consultative examiner found that the claimant had a full range of motion, and assessed him with lumbar disc disease, chronic right forearm pain, status post surgical hardware placement, left shoulder pain, history of torn ACL on left knee, history of bilateral carpal tunnel syndrome, history of dysrhythmia, history of depression. (Tr. 387-393). A July 2009 consultative exam revealed decreased range of motion in left knee flexion, in lumbar flexion to 45 degrees, extension to 10 degrees. The doctor noted that pain was elicited in all range of motion testing of the lumbar spine and cervical spine, and assessed the claimant with a similar list of impairments. (Tr. 408-415).

At the administrative hearing, the claimant testified that the things that kept him from working included severe lower back pain that included several herniated discs, bad shoulders, a bad right ankle, and left ACL tear. (Tr. 56-58). He further testified that he

-6-

takes prescription pain medications to manage his pain. (Tr. 59-60). The claimant clarified that he does not sit in a stand to hunt, but drives on a friend's property and sits to hunt. (Tr. 68-69). The ALJ then questioned the claimant further, particularly questioning what the claimant knew about the 2006 MSS compared to his treatment notes indicating he had no disability. The claimant responded that he believed Dr. Smith had confused the claimant's abilities with "idle talk" and that he was afraid to confront Dr. Smith because he needed his pain medications. (Tr. 80-86). The ALJ continued to question the claimant about Dr. Smith's descriptions of the claimant, and the claimant asserted that those descriptions applied to the time period before he was injured. (Tr. 93-94). A vocational expert (VE) also testified at the hearing, including classifying the claimant's past relevant work. The VE testified that the farm or ranch hand position was heavy as ordinarily performed, but that he performed it at a light level, which the VE described as accommodated work. (Tr. 106-107). The ALJ then stated that rather than referring to accommodated work, it was how the claimant actually performed the work and how it is ordinarily performed. (Tr. 108-109). The claimant had described the work as six days per week, eight hours per day, at the rate of $7 an hour, and the ALJ found that this was over SGA as the claimant described it. (Tr. 110). The claimant's attorney did not challenge this.

In his written opinion, the ALJ summarized the claimant's hearing testimony as well as the medical evidence. (Tr. 19-21). He "granted little probative weight to the claimant's testimony," noting that "no physician, treating or otherwise, has ever indicated that there is any medical reason why the claimant's activities should ever be so limited"

-7-

and that the medical evidence demonstrated "minimal abnormalities." (Tr. 21). He then found that the RFC was supported by the opinions of the consultative examiners, as well as the evidence, and specifically noted that no treating physician had stated that the claimant was more limited than the limitations reflected in the RFC. (Tr. 21).

As part of his step four argument, the claimant contends that he cannot return to his past relevant work as a farm or ranch hand because he did not perform it at the level of substantial gainful activity. "Past relevant work is work . . . done within the past 15 years, that was substantial gainful activity, and that lasted long enough . . . to learn to do it." 20 C.F.R. § 416.960(b)(1). Substantial gainful activity is "work activity that involves doing significant physical or mental activities[,]" 20 C.F.R. § 416.972(a), which is generally determined by earnings. 20 C.F.R. § 416.974(a)(1). In 2001, earnings of $740 per month qualified as substantial gainful activity. *See* http://www.ssa.gov/oact/cola/sga.html. The claimant earned $3,436.50 from February 2001 through July 2001, or $572.72 per month. (Tr. 194). But it is merely "a presumption *against* a finding of SGA if the claimant's average monthly earnings are *below* the threshold level calculated under the regulations," *Sheppard v. Astrue*, 426 Fed. Appx. 608, 610 (10th Cir. 2011), and an ALJ may "consider other information in addition to . . . earnings if there is evidence indicating that [the claimant] may be engaging in substantial gainful activity." 20 C.F.R. § 416.974(b)(3)(ii). The ALJ questioned the claimant on this point at length during the administrative hearing, *inter alia*, eliciting testimony that the claimant was working 40 hours a week. (Tr. 111). The ALJ did not, however, discuss or even mention the claimant's earnings in his written decision; he

simply concluded that the claimant's past relevant work as a farm or ranch hand was performed at the level of substantial gainful activity without any special accommodation. (Tr. 35).  Nor for that matter did the ALJ explain his disagreement with the vocational expert, who testified that he believed the claimant's work as a farm or ranch hand had been accommodated.  (Tr. 106-107).  The ALJ's failure to fully analyze the evidence regarding substantial activity was undoubtedly erroneous.  *See generally Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[The ALJ] must  discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.").

Because the ALJ failed to make the proper findings related to the claimant's work as SGA, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis.  If such analysis on remand results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

### Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 26th day of September, 2013.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma